IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **KRISTIN CANTRELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 4:14-CV-668-VEH |
| ) | |
| **JPMORGAN CHASE BANK, N.A.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

The case comes before the court on the defendant's Motion to Dismiss (doc. 15) and the plaintiff's Motion to Allow Second Amended Complaint (doc. 22). For the reasons stated herein, the motion to dismiss will be **GRANTED**, and the motion to amend the complaint will be **DENIED**.

### I.   INTRODUCTION AND PROCEDURAL HISTORY

This civil action was originally filed by the plaintiff, Kristin Cantrell, in the Circuit Court of Etowah County, Alabama. (Doc. 1-1 at 3). The original complaint alleged that defendant JPMorgan Chase Bank, N.A. (identified in the complaint as J.P. Morgan "d/b/a Chase" and hereinafter referred to as "Chase"), the holder of the Note and Mortgage on the plaintiff's home, and various fictitiously named

defendants, were liable for wrongful foreclosure (Count One) and fraud (Count Two). (Doc. 1-1 at 3). The case was removed to this court on April 11, 2014. (Doc. 1).

On April 15, 2014, Chase moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. (Doc. 6). The court's uniform initial order, entered in this case on April 15, 2014, provides that any response to that motion was due no later than April 29, 2014. (Doc. 4 at 23) ("The opponent's responsive brief shall be filed no later than fourteen (14) calendar days thereafter."). The plaintiff filed no response by that deadline.

On May 1, 2014, two days after her response to the motion to dismiss was due, the plaintiff moved the court to allow her to amend the style of her complaint to properly name the defendant. (Doc. 7). The unopposed motion was granted by the court that same day. Also that same day, the plaintiff filed an unopposed motion for a 7 day extension of time to respond to the motion to dismiss, because "[p]laintiff's [c]ounsel has had an unusually heavy workload for the prior 14 days." (Docs. 8, 9).[1] Granting the relief the plaintiff requested would have made her deadline May 6, 2014–7 days from her original deadline of April 29, 2014. Instead of the relief she

---

[1] Document 9 was actually filed the next day, May 2, 2014. It amended document 8. The motions are essentially the same.

requested, the court granted the motion and gave the plaintiff until May 9, 2014, to respond.

On May 9, 2014, the plaintiff moved the court to allow her to file an amended complaint which "adds more specificity to the claims and adds a new claim of Failure to Grant Loan Modification." (Doc. 10). That same day, the plaintiff also responded to the then pending motion to dismiss. (Doc. 11). Attached to her response is the plaintiff's affidavit. (Doc. 11-1 at 1-3). Attached to the affidavit are three exhibits identified by the affidavit as:

– a transcript of a recording of a September 13, 2013, phone conversation between the plaintiff and a representative (or representatives) of Chase (doc. 11-1 at 4-26);

– a June 5, 2013, letter from Regions Bank (doc. 11-1 at 27); and

– the 2013 payment history, dated sometime in November of 2013,[2] prepared by Chase, for the loan on the plaintiff's residence (doc. 11-1 at 28-33).

On May 12, 2014, the defendant responded to the plaintiff's motion to amend, stating that it did not oppose the motion and agreeing to its motion to dismiss being termed. (Doc. 12).

The plaintiff filed her amended complaint on May 13, 2014. (Doc. 13). In

---

[2] The exact day of the month is unreadable.

addition to again alleging wrongful foreclosure (Count One) and fraud (Count Two), it added a count for "Failure to Grant Loan Modification" (Count Three). On June 3, 2014, the defendant filed a new motion to dismiss which remains pending. (Doc. 15). Any response to that motion was due no later than June 17, 2014.

On June 18, 2014, one day <u>after</u> her response to the motion to dismiss was due, the plaintiff filed an unopposed motion to extend her time to respond to the motion by 14 days "due to health of [p]laintiff's counsel." (Doc. 17). The motion for an extension also stated that "[t]he Motion to Dismiss, consisting of 23 pages and four exhibits, raises complex issues which require a significant response." (Doc. 17 at 1). The motion was granted that same day, making the plaintiff's new response deadline July 1, 2014. The plaintiff failed to file anything by that deadline.

On July 9, 2014, the defendant filed its reply to the motion to dismiss and noted that the plaintiff had filed no response to the motion. (Doc. 18 at 2). On July 10, 2014, 9 days after her response was due, the plaintiff filed a contested motion for an additional 11 days to respond to the pending motion to dismiss. (Doc. 20). In that motion the plaintiff stated:

> Counsel was without his primary paralegal from June 27 – July 6, 2014.
>
> Counsel was overwhelmed with the case of *Oliver v. Aetna Life Ins. Co.[,] et al*, 4:13-cv-1947-VEH during the week of June 30 – July 3, 2014.

4

Counsel continues to recuperate from a stroke he suffered on 5/18/14. (Doc. 20 at 1). On July 10, 2014, the court, by text order, granted the motion for an extension, and gave the plaintiff until July 14, 2014, to respond to the motion.

On July 11, 2014, the plaintiff filed a response to the pending motion to dismiss. (Doc. 23). Attached to that response are the same exhibits that were attached to her response to the first motion to dismiss. (Doc. 23-2). She also attached an August 7, 2013, letter, apparently written by Mark Cantrell (her husband at the time), to Chase. (Doc. 23-1). Importantly, in this response, she states that the payment history "provided by Chase" shows "the loan was purchased by a third party prior to the foreclosure on 7/23/13. [Doc. 23-2 at 28-33] shows a payment of $196,508.29 indicating that the loan had been paid on the same date. An additional $4,991.48 was paid as a partial settlement." (Doc. 23 at 2).

On July 10, 2014, the plaintiff filed a contested "Motion to Allow Second Amended Complaint" which remains pending. (Doc. 22). She seeks to amend to add allegations that Chase was in fact "not the owner of the loan and mortgage . . . on the day of foreclosure." (Doc. 22-1 at 1). She contends that "[p]ayment records produced by Chase in a related case show that Chase did not own the note and mortgage on 9/23/13 the date of the foreclosure. The note and mortgage were paid off on 7/23/13 apparently by Fannie Mae." (Doc. 22-1 at 1). Neither the motion, nor the proposed

amended complaint attached thereto, attaches the payment records. But each are clearly referencing the documents the plaintiff had previously filed into the record as documents 11-1 at 28-33 and 23-3 at 28-33.

## II.    STANDARD

### A.    Rule 12(b)(6) Dismissal Standard

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion: (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S.

Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at

556, 127 S. Ct. at 1965).

### B. Leave To Amend

Whether to grant leave to amend is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. This rule "severely restricts" a district court's discretion to dismiss a complaint without first granting leave to amend. *Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005). However,

> "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."

*Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## III. ANALYSIS

### A. The Motion To Amend

The Second Amended Complaint would add allegations that Chase was in fact "not the owner of the loan and mortgage . . . on the day of foreclosure." (Doc. 22-1

8

at 1). It contends that "[p]ayment records produced by Chase in a related case show that Chase did not own the note and mortgage on 9/23/13 the date of the foreclosure. The note and mortgage were paid off on 7/23/13 apparently by Fannie Mae." (Doc. 22-1 at 1). Importantly, the plaintiff has amended once before. Neither her original nor her amended complaint made this claim. As noted above, the records upon which the plaintiff bases this claim were attached to the plaintiff's May 9, 2014, response to the original motion to dismiss. (Compare doc. 23-2 at 2, 28-33 with doc. 11-1 at 28-33). Accordingly, she was in possession of the information upon which her proposed amendment is based at least four days before she filed her first amended complaint, and <u>two months</u> before she moved to file her second amended complaint. She has not explained why these allegations were not included in either of these complaints. She has had ample time and opportunity to include these allegations and has not done so. In light of these facts, and the plaintiff's pattern of missed deadlines in this case, the court finds that the plaintiff has unduly delayed in seeking this amendment, and/or failed to cure this defect with her previous amendments. For this reason alone, the currently requested amendment should not be allowed.

In addition, however, the court finds that the motion is due to be denied because the amendment would be futile. As shown in the next section of this opinion, even if the new allegations are considered, the plaintiff still fails to state a claim upon

9

which relief may be granted.

### B. The Motion To Dismiss

#### 1. *Wrongful Foreclosure*

Count One of the Amended Complaint and the proposed Second Amended Complaint alleges wrongful foreclosure. Such a claim exists only where "'a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.'" *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (*quoting Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass'n,* 607 So.2d 180, 182 (Ala.1992)).

In this case the Amended Complaint alleges:

1. Plaintiff's home at 45 Wilson Circle, Gadsden, Alabama was wrongfully foreclosed on 9/23/13 by Defendant.

2. Defendant J.P. Morgan Chase Bank (Chase) was the owner of the mortgage and the servicer of a loan and mortgage on [p]laintiff's home.

3. Chase foreclosed on [p]laintiff's home on 9/23/13 after a phone conversation between [p]laintiff and Chase in which [p]laintiff offered to bring the account current and in which [p]laintiff agreed to offer proof that payment had been declined. Chase agreed to review the submissions with the inference that the foreclosure would be cancelled after submissions were received.

4. Plaintiff attempted to call Chase on Monday, 9/16/13, as promised and [p]laintiff provided the requested information to Chase via fax on 9/16/13. In accordance with the conversation, the foreclosure should have been rescinded after the submissions by Cantrell.

5. On 5/31/13, Regions confirmed that an electronic payment of $1,525.00 had been rejected. Proof of the rejected payment was submitted to Chase on 9/16/13.

6. The property was transferred out of [p]laintiff's husband's name into her name prior to foreclosure at the request of Fannie Mae to facilitate a loan modification.

7. Defendant Chase proceeded with the foreclosure on 9/23/13 despite the conversation and representatives of 9/13/13 to review documents regarding rejected payments and despite the submission of 9/16/13.

8. As a consequence, [p]laintiff has suffered loss of her home, extreme mental distress and attorney fees.

(Doc. 13 at 1-2). The Second Amended Complaint would add to these allegations that Chase was in fact "not the owner of the loan and mortgage . . . on the day of foreclosure." (Doc. 22-1 at 1). It also contends that "[p]ayment records produced by Chase in a related case show that Chase did not own the note and mortgage on 9/23/13 the date of the foreclosure. The note and mortgage were paid off on 7/23/13 apparently by Fannie Mae." (Doc. 22-1 at 1). Thus, if the amendment were allowed, the plaintiff would allege that the defendant is liable for wrongful foreclosure because: 1) the plaintiff "inferred," after a telephone call, that Chase would not foreclose, and 2) Chase did not own the Note and Mortgage when it foreclosed.

### a. The "Inference" Not To Foreclose

The plaintiff alleges that "Chase agreed to review the submissions with the

<u>inference</u> that the foreclosure would be cancelled after submissions were received." (Doc. 13 at 1; 22-1 at 2) (emphasis supplied). First, this line of the complaint does not allege that Chase <u>agreed</u> to <u>anything</u>. An "inference" would be something that the <u>plaintiff</u> made based upon information she allegedly received during this call. *See Blacks Law Dictionary* (6th ed.) at 778 (defining inferences as "deductions," or "conclusions," through which a fact is determined as a result of a "logical consequence from other facts"). Whatever the <u>plaintiff</u> may have inferred from her conversation, the complaint does not allege that Chase <u>agreed</u> not to foreclose.[3]

Even if somehow this language could be construed as stating that Chase, during a telephone conversation, agreed not to foreclose, the alleged agreement is barred by the statute of frauds. *See* Ala. Code § 8-9-2(7) (voiding unless in writing "[e]very agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000."); *Coleman v. BAC Servicing*, 104 So. 3d 195, 206 (Ala. Civ. App. 2012), *cert. denied* (Sept. 7, 2012) (alleged oral misrepresentation that foreclosure would not take place violated the

---

[3] Even if the plaintiff meant the word "implication" rather than "inference," an implication is a far cry from an <u>agreement</u>.

12

statute of frauds).[4]

Finally, even if there was an agreement (rather than an inference), and the agreement did not violate the statute of frauds, the failure to abide by that agreement is not wrongful foreclosure, which requires a showing that the foreclosure was done <u>for a purpose other than to secure the debt</u>. Neither the Amended Complaint, nor the proposed Second Amended Complaint makes that allegation. *See also, Coleman*, 104 So. 3d at 207 ("[W]hen a tort claim turns on an alleged agreement that is unenforceable under the Statute of Frauds, the Statute of Frauds also bars proof of that agreement to support the tort claim.").[5]

### b. The Allegation That Chase Was Not the Holder of the Note and Mortgage on the Day of the Foreclosure

The second amended complaint alleges that "[p]ayment records produced by Chase in a related case show that Chase did not own the note and mortgage on 9/23/13 the date of the foreclosure. The note and mortgage were paid off on 7/23/13 apparently by Fannie Mae." (Doc. 22-1 at 1). The record reflects a Note, originally

---

[4] In her brief, the plaintiff "acknowledges" this argument, but does not refute it. (Doc. 23 at 8).

[5] The court has not reviewed or considered, and specifically excludes from its consideration, the plaintiff's affidavit, the transcript of the recording of the call with Chase, the letter from Regions Bank, and the plaintiff's husband's letter to Chase. The court has not considered the defendant's argument that the transcript and the plaintiff's affidavit actually reveal that there was no agreement. (Doc. 24 at 8-10; doc. 25 at 5-8).

issued in favor of Quicken Loans, Inc. on August 19, 2009. (Doc. 15-1 at 2).[6] The record reflects that the Note was endorsed to Chase. (Doc. 24-2 at 4). The Mortgage, originally executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") (doc. 15-2), was assigned to Chase on December 21, 2012 (doc. 15-3).

Nothing in the payment records shows that Chase did not own the Mortgage and Note on the date of foreclosure. The payment records reflect two credits totaling $200,508.24 that were made on July 23, 2013. (Doc. 25-1 at 4 (reference #120 & 119)). The very next entry reflects a debit in the amount of $200,508.24. (Doc. 25-1 at 3 (reference #121)). These two entries cancel each other out. The payment history does not reflect why these entries were made, and certainly does not support the plaintiff's conclusory allegation that the loan was "paid off." Indeed, quite the contrary. The payment history is dated "November 2013" and reflects a principal balance still owing, as of that date, of $195,516.76. Further, there is no indication on these documents at all to support the plaintiff's conclusory allegation that, if it was paid off, it was paid off by Fannie Mae. Count One fails to state a claim upon which

---

[6] The Note, Mortgage, Assignment of Mortgage, and Foreclosure Deed, are all attached to the pending motion to dismiss. (Docs. 15-1, 15-2, 15-3, and 15-4). An endorsed copy of the Note is attached to the defendant's second reply to the motion to dismiss. (Doc. 24-2). The 2013 payment records are referenced in the proposed amended complaint. (Doc. 22-1 at 1). The court may consider these documents at the motion to dismiss stage, without converting the motion to a motion for summary judgment, because they are "(1) central to the plaintiff's claim, and (2) [their] authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (internal quotations and citations omitted).

relief may be granted.[7, 8]

### 2. *Fraud*

In both her Amended Complaint and proposed Second Amended Complaint the plaintiff alleges:

> 2. Plaintiff reasonably relied upon the representations by Chase in the phone conversation of 9/13/13 that new documents would be considered and reasonably relied upon the inference that foreclosure would be cancelled upon submission of proof that payments had been rejected. In return, [p]laintiff did not make additional payments on her home prior to the unexpected foreclosure.
>
> 3. If Chase had not made the false representations, [p]laintiff would have paid the amount claimed due prior to foreclosure which would have precluded the foreclosure. Records of Chase show that the account was only one payment behind at foreclosure. Chase reported a monthly payment on 5/31/13.
>
> 4. Plaintiff informed Chase on 9/13/13 that she had the money to bring the account current.

---

[7] Further, as noted above, even if the payment records supported the allegation that Chase did not own the Mortgage at the time of the foreclosure, the plaintiff has not alleged (nor argued in her brief) that the foreclosure was done for some reason other than to secure the debt on the property.

[8] All of the points made in section B.1. of the court's opinion were made by the defendant in its motion to dismiss. The plaintiff failed to address any of them in her response brief. (Doc. 23 at 6-7). Instead, the plaintiff merely "cuts and pastes," without discussion, two short block quotes from *Campbell v. Bank of Am., N.A.*, No. 2100246, 2012 WL 2362615 at *3 (Ala. Civ. App. June 22, 2012), cert. denied (Sept. 13, 2013) and *Sturdivant v. BAC Home Loan Servicing, LP*, No. 2100245, 2013 WL 6511669 at *6 (Ala. Civ. App. Dec. 13, 2013). Both of these cases are ejectment, not wrongful foreclosure cases. The plaintiff fails to argue why these cases are relevant, and also fails to explain, in any way, why the facts she alleges plausibly establish wrongful foreclosure.

(Doc. 13 at 3, doc. 22-1 at 3).

First, in order to recover for fraud, the plaintiff must establish that Chase made a false representation of material fact. *Liberty Nat. Life Ins. Co. v. Ingram*, 887 So. 2d 222, 227 (Ala. 2004). In this case, the plaintiff alleges no representation by Chase, only her own "inference."

Second, in Alabama, "[a]ny species of fraud based on the promise to do something in the future . . . would be a claim of promissory fraud." *Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1211 (Ala. 2008). In this case, the plaintiff alleges promissory fraud because she states that Chase promised not to foreclose, and then did so anyway. Under Alabama law, a promissory fraud claim cannot be based on a contract that is voided, as this one is, by the statute of frauds. *See, DeFriece v. McCorquodale*, 998 So. 2d 465, 471 (Ala. 2008) ("[A] party may not avoid the effect of the Statute of Frauds by framing the claim as one alleging promissory fraud.").

Finally, to prove promissory fraud, the plaintiff must show that "the defendant intended to deceive." *Southland Bank*, 21 So. 3d at 1212. Neither the Amended Complaint nor the proposed Second Amended Complaint alleges that Chase <u>intended to deceive</u> the plaintiff when it made whatever representations it allegedly made.

Count Two fails to state a claim upon which relief may be granted.[9, 10]

### 3. *Failure To Grant Loan Modification*

Both the Amended Complaint and proposed Second Amended Complaint allege:

> 2. Plaintiff and her husband requested mortgage assistance on 4/8/11. Relief was denied on 6/23/11.
>
> 3. Plaintiff and her husband requested loan modification on 8/18/11 and modification was denied on 9/9/11.
>
> 4. Plaintiff made numerous phone calls to Chase for a loan modification in 2011, 2012 and 2013.
>
> 5. Chase never provided the criteria for eligibility for loan modification.
>
> 6. The Federal government has adopted numerous policies and procedures regarding eligibility for loan modification.
>
> 7. Defendant has adopted criteria for loan modifications.
>
> 8. Defendant failed to grant [p]laintiff and her husband a loan modification even thought they were eligible under appropriate guidelines.
>
> 9. Chase violated its own standards and the Federal standards for loan modification by refusing to grant [p]laintiff a loan modification.

---

[9] The plaintiff's response brief fails to address these arguments. Instead, she merely includes another short block quote on the law of fraud and then conclusorily states: "Plaintiff has stated a valid fraud claim which should not be dismissed." (Doc. 23 at 7).

[10] In light of this holding, the court will not address the defendant's argument that the plaintiff has failed to allege detrimental reliance. (Doc. 15 at 13-15).

10. Plaintiff was entitled to a modification under modification guidelines in effect at the time of foreclosure.

11. Plaintiff is able to pay a reasonable monthly payment under a loan modification.

12. Plaintiff had the property transferred by her husband's name to her name to facilitate a loan modification at the request of Fannie Mae.

13. Congress passed the Emergency Economic Stabilization Act ('EESA') signed into law on October 3, 2008. 12 U.S.C. § 5201 (2008). EESA is the implementing statute for the Troubled Asset Relief Program ('TARP'), and is responsible for implementing programs paid for by TARP expenditures. 12 U.S.C. §§ 5211, 5225 (2008). EESA allocated $700 billion to Treasury to restore liquidity and stability to the financial system. Enabled with this authority, on February 18, 2009, Treasury created the Making Home Affordable Program, a comprehensive plan to stabilize the U.S. housing market. See Amended Complaint. HAMP is a component of the Making Home Affordable Program.

14. The Treasury Department entered into contracts with Fannie Mae, as financial agent, and Freddie Mac, as compliance agent, to administer HAMP. Fannie Mae, in turn, entered into contracts with loan servicers, which required the servicers to comply with HAMP Guidelines. Participation by servicers of non-Government-Sponsored Entity ('GSE') loans is voluntary and if there are future material changes to the HAMP program or guidelines, servicers have the unilateral right to opt out of HAMP.

15. Treasury encourages loan servicer participation in HAMP by paying financial incentives to servicers and loan owners/investors that are sufficient to make a HAMP modification a better financial outcome than foreclosure for the servicer and investor.

16. Under the HAMP Guidelines, servicers are required to temporarily suspend foreclosure proceedings to allow borrowers sufficient time to file an application for HAMP modification. Any foreclosure proceedings commenced before the loans were considered

> for HAMP modifications **must be** suspended.
>
> 17.   The National Housing Act, 12 U.S.C. §1701x was amended on 7/21/10 to provide regional counseling and loan modification opportunities prior to a foreclosure. The Making Homes Affordable Program was implemented in February 2009 to stabilize the housing market and help struggling homeowners get relief and avoid foreclosure. In March 2009, the Treasury Department issued uniform guidance for loan modifications across the mortgage industry and subsequently updated and expanded that guidance in a series of policy announcements. (Ex 5 – "Making Homes Affordable")
>
> 18.   The Home Affordable Modification Program (HAMP) was implemented in 2009 which protected against unnecessary foreclosure. The Home Affordable Unemployment Program (UP) provides servicers the flexibility to provide assistance to borrowers whose hardship is related to unemployment. (Ex. 5 "Making Homes Affordable").

(Doc. 13 at 3-6; doc 22-1 at 4-7) (emphasis in original).

The plaintiff fails to cite, and this court has not found, any Alabama case recognizing an Alabama common law cause of action for failure to grant a loan modification. The defendant made this argument in its motion to dismiss, and the plaintiff failed to respond to it. Instead, she merely restates, nearly verbatim, paragraphs 13-18 of her complaint, with the addition of the following: "Plaintiff has stated a valid claim for failure to approve loan modification." (Doc. 23 at 10). As the sections the plaintiff quotes deal entirely with HAMP, the court sees her response as limiting her claim to Chase's alleged failure to comply with HAMP procedures. Even if she is not so limiting her claim, the court affirmatively holds that there is no such

claim under Alabama law. Further, the plaintiff lacks standing to bring a claim under HAMP because that statute contains no express or implied private right of action. *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012).[11]

## IV.   CONCLUSION

The court rejects the plaintiff's argument that discovery is needed before it can rule on the pending motion to dismiss. (Doc. 23 at 10). Based on the foregoing, the motion to amend will be **DENIED** and the motion to dismiss will be **GRANTED**. This case will be **DISMISSED with prejudice**. A separate order will be entered.

**DONE** and **ORDERED** this 15th day of August, 2014.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[11] The defendant, in great detail, argues alternatively for dismissal if the plaintiff's claim is determined to be some form of a negligence or breach of contract claim. (Doc. 15 at 17-21). The court has not addressed these arguments because, if the plaintiff intended to make a negligence or breach of contract claim in this count, the allegations contained therein do not suffice. Further, as noted, despite this argument being made by the defendant, the plaintiff's reply brief discusses neither negligence nor breach of contract.